Scott E. Gizer, Esq., Nevada Bar No. 12216
  *sgizer@earlysullivan.com*
EARLY SULLIVAN WRIGHT
  GIZER & McRAE LLP
8716 Spanish Ridge Avenue, Suite 105
Las Vegas, Nevada 89148
Telephone:  (702) 331-7593
Facsimile:  (702) 331-1652

Eric P. Early, State Bar Number 166275
(to apply *Pro Hac Vice*)
  *eearly@earlysullivan.com*
Jeremy J. F. Gray, State Bar Number 150075
(to apply *Pro Hac Vice*)
  *jgray@earlysullivan.com*
EARLY SULLIVAN WRIGHT
  GIZER & McRAE LLP
6420 Wilshire Boulevard, 17th Floor
Los Angeles, California 90048
Telephone: (323) 301-4660
Facsimile: (323) 301-4676

Attorneys for Plaintiff
MI-94, LLC, also known as
METALAST INTERNATIONAL LLC

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| MI-94, LLC, a Nevada limited liability company, also known as METALAST INTERNATIONAL LLC, a Nevada limited liability company,<br><br>Plaintiffs,<br><br>vs.<br><br>CHEMETALL US, INC., a Delaware corporation; BASF CORPORATION, a Delaware corporation; QUALICHEM INC., a Virginia corporation; DUBOIS CHEMICALS, INC., a Delaware corporation; MILES CHEMICAL COMPANY, a California corporation; JOHN SCHNEIDER AND ASSOCIATES, INC., a Wisconsin corporation; BROCO PRODUCTS, INC., an Ohio corporation; RONATEC C2C, a California corporation; ELECTROPLATING CONSULTANTS INTERNATIONAL, an Oklahoma corporation; ALBEMARLE | Civil Action No.:<br><br>**COMPLAINT FOR DAMAGES AND DECLARATORY RELIEF**<br><br>1.  **FALSE DESIGNATION OF ORIGIN (DISTRIBUTOR DEFENDANTS)**<br>2.  **FALSE DESIGNATION OF ORIGIN (MEILINGS DEFENDANTS)**<br>3.  **INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE**<br>4.  **UNJUST ENRICHMENT**<br><br>**DEMAND FOR JURY TRIAL** |



**COMPLAINT**

723466.1

1   CORPORATION, a Nevada corporation;
      SOUTHERN INDUSTRIAL CHEMICALS,
2   INC, an Alabama corporation;  Dean Meiling,
      and individual, Madylon Meiling, an
3   individual; DSM Partners, LLC, a Nevada
      entity; CHEMEON SURFACE
4   TECHNOLOGY, a Nevada entity; and DOES
      1-10, inclusive,

5

6              Defendants.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28



EARLY
SULLIVAN
WRIGHT
GIZER &
MCRAE LLP
ATTORNEYS AT LAW

723466.1

**COMPLAINT**

COMES NOW, Plaintiff MI-94 ("MI-94" or "Plaintiff") and brings causes of action against DEFENDANTS CHEMETALL US, INC., a Delaware corporation; BASF CORPORATION, a Delaware corporation; QUALICHEM INC., a Virginia corporation; DUBOIS CHEMICALS, INC, a Delaware corporation; MILES CHEMICAL COMPANY, a California corporation; JOHN SCHNEIDER & ASSOCIATES, INC., a Wisconsin corporation; BROCO PRODUCTS, INC., an Ohio corporation; RONATEC C2C, a California corporation; ELECTROPLATING CONSULTANTS INTERNATIONAL, an Oklahoma corporation (collectively the "Distributor Defendants"); Dean Meiling, an individual; Madylon Meiling, an individual; DSM Partners, LLC, a Nevada entity; CHEMEON SURFACE TECHNOLOGY, a Nevada entity (Dean Meiling, Madylon Meiling, DSM Partners, LLC and Chemeon Surface Technology are referred to herein as the "Meilings"); and DOES 1-10, inclusive (all defendants are referred to herein collectively as "Defendants") as follows:

**INTRODUCTION**

1.     This case concerns the "Metalast" trademark (the "Trademark"). The Metalast Trademark is used on metal coating products with military and industrial applications.

2.     The Plaintiff, MI-94, LLC ("Plaintiff" or "MI-94") does not own the Trademark. Plaintiff brings this action under 15 U.S.C. section 1125 which provides that an action under the Lanham Act may be brought by "party who believes that he or she is or is likely to be damaged" by another's misuse of a trademark.  15 U.S.C. § 1125.

3.     Plaintiff MI-94 was formerly known as Metalast International, LLC ("Metalast LLC"). MI-94 currently holds all rights and interests relevant and required for this action. Specifically, Plaintiff has been and will be damaged by the misuse of the Trademark alleged herein because Plaintiff possess *two types of interest*s in the Trademark which give rise to the claims under Section 1125:

**A.     License Agreement**.  When Plaintiff was known as Metalast LLC it became  a party to a 1996 License Agreement (the "License Agreement").  This License Agreement authorized Plaintiff to exploit, to the fullest extent of the law, the trademark and service mark ("Trademark"), which, as stated in the License "as maybe [*sic*] amended from time to time."

EARLY
SULLIVAN
WRIGHT
GIZER &
McRAE LLP
ATTORNEYS AT LAW

723466.1

These rights included the right of use of the Metalast Registered Trademark and Service mark in all applications as defined by the United States Patent and Trademark Office ("USPTO").  This License Agreement automatically renewed every year "for so long as MII or its assigns or successors in interest own the Trademark unless terminated or cancelled as provided for herein."  The License Agreement has never been terminated or cancelled pursuant to the terms of the agreement, by operation of law, or otherwise.

   **B**.  **Financial Interest**.  Plaintiff possesses a second, independent interest which has been and is being damaged by the misuse of the Trademark alleged herein.  Under the terms of Plaintiff's Operating Agreement, the explicit purpose of Metalast LLC, which was founded in 1994, was and is to "market and license the worldwide rights . . . of METALST . . . and research and develop additional uses for the technology."  To that end, the members of Plaintiff invested tens of millions of dollars in developing the Metalast technology, marketing it and licensing it to users.  These investments were almost entirely responsible for generating and creating value in the Trademark.  To date, Plaintiff's members have received no return on their investments and nothing from business conducted with the Trademark.

   4.  <u>**There are two categories of defendants**</u>.  (a) The first category of defendants is the Meilings (Dean and Madylon Meiling and their entities DSM Partners, LLC and Chemeon Surface Technology ("Chemeon").)  The Meilings, through their entities have falsely claimed ownership of the Metalast Trademark and the right to use the Metalast name, history and reputation. The Meilings have parlayed their false claims into agreements with a number of companies whereby the Meilings improperly collect monies from the use of the Metalst name. Specifically, Meilings introduce into commerce metal coating goods which unlawfully contain the words "formerly Metalast."  The use of the words "formerly Metalast" constitutes a false designation of origin and is a false and misleading description of fact which damages Plaintiff. The Meilings are well aware of Plaintiff's interests in the Trademark and thus their conduct constitutes not only a violation of Section 1125 but also the common law tort of interference with

EARLY
SULLIVAN
WRIGHT
GIZER &
MCRAE LLP
ATTORNEYS AT LAW
723466.1

prospective economic advantage;[1] (b) The second category of defendants are the Distributor Defendants.  The Distributor Defendants purchase Chemeon products which unlawfully contain the words "formerly Metalast."  The Distributor Defendants resale or distribution of products using this Meiling version of the Metalast Trademark violates Section 1125 and also contributes to the Meiling's violation of Section 1125.

## PARTIES

5.      The Plaintiff in this action, MI-94, LLC is a Limited Liability Company organized under the laws of the State of Nevada. The Plaintiff was originally known as Metalast International LLC ("Metalast LLC") which was formed in 1994 pursuant to an operating agreement later amended on June 6, 1996 (the "Operating Agreement").  This entity, Metalast LLC was renamed "MI-94, LLC" by a Receiver during the 2013 Receivership proceeding (the Receivership proceeding is described below).  From its inception, the purpose of the Plaintiff was to raise equity investments to promote, develop and expand the Metalast Trademark and related products, and to deliver to the Members, returns on their massive investments.  Plaintiff MI-94, LLC represents the interests of the members of a limited liability company who invested tens of million dollars in generating value for the name and trademark known as "Metalast," as well as for Metalast itself.

6.      Defendant CHEMETALL US, INC. is a corporation formed under the laws of the state of Delaware, and registered to do business in the state of California.

7.      Defendant QUALICHEM, INC. is a corporation formed under the laws of the state of Virginia, and registered to do business in the state of California.

8.      Defendant BASF CORPORATION, INC. is a corporation formed under the laws of the state of Delaware.

9.      Defendant DUBOIS CHEMICALS, INC. is a corporation formed under the laws

---

[1] Section 1125 prohibits a party from, with respect to a Trademark, engaging in conduct which amounts to a "false designation of origin, false or misleading description of fact, or false or misleading representation of fact [and which] is likely to cause confusion, or cause mistake, or to deceive as to the affiliation, connection, or association of . . . the origin, sponsorship, or approval of goods, services, or commercial activities by another person . . . ." 15 U.S.C. § 1125.

EARLY
SULLIVAN
WRIGHT
GIZER &
McRAE LLP
ATTORNEYS AT LAW
WGM

of the state of Delaware and registered to do business in the state of California.

10.     Defendant MILES CHEMICAL COMPANY, INC. is a corporation formed under the laws of the state of California.

11.     Defendant JOHN SCHNEIDER & ASSOCIATES, INC. is a corporation formed under the laws of the state of Wisconsin.

12.     Defendant BROCO PRODUCTS, INC. is a corporation formed under the laws of the state of Ohio.

13.     Defendant RONATEC C2C, INC. is a corporation formed under the laws of the state of California.

14.     ELECTROPLATING    CONSULTANTS    INTERNATIONAL,    INC.    is    a corporation formed under the laws of the state of Oklahoma.

15.     DEAN MEILING and MADYLON MEILING, are individuals residing in Nevada.

16.     DSM PARTNERS, LLC, is an entity organized and existing under the laws of the State of Nevada.

17.     CHEMEON SURFACE TECHNOLOGY is an entity organized and existing under the laws of the State of Nevada.

18.     The names and capacities, whether individual, corporate, associate, or otherwise of Defendants named here in as DOES 1-10, inclusive, are currently unknown to Plaintiff, who therefore sues said defendants by such fictitious names.  Plaintiff is informed and believes, and thereon alleges that these fictitiously named defendants are in some manner responsible for the events and damages alleged herein and will seek leave of court to amend this Complaint to show the true names and capacities when the same have been ascertained.

**VENUE AND JURISDICTION**

19.     This Court has Federal subject matter jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1338(a) and (b), by virtue of 15 U.S.C. et seq., in that the case arises out of § 43(a) of the Lanham Act, and supplemental jurisdiction under 28 U.S.C. §§ 1367(a) and 1338(a)(b).

20.     Venue is proper, *inter alia*, under 28 U.S.C. § 1391(b) because on information and

EARLY
SULLIVAN
WRIGHT
GIZER &
MCRAE LLP
ATTORNEYS AT LAW
723466.1

belief, a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

21.    Personal jurisdiction exists over Defendants because on information and belief, Defendants conduct business in Nevada and in this judicial district, or otherwise avail themselves of the privileges and protections of the laws of the Nevada, such that this Court's assertion of jurisdiction over Defendants does not offend traditional notions of fair play and due process.

22.    Moreover, the Distributor Defendants are currently parties to a related lawsuit pending in this judicial district brought by David Semas which alleges that the Defendants have infringed the Metalast Trademark (the "Semas Action").  The Distributor Defendants have not objected to venue or jurisdiction in this district in the Semas Action.  Accordingly, this action should be consolidated with the Semas Action.

23.    This action is a related case to *Semas v. Chemetall Us, Inc.*, Case Number 3:19-cv-00125-CLB.

**FACTUAL BACKGROUND**

24.    **The Metalast Trademark.**  In 1995, an individual named David Semas filed the first applications for registration of the Metalast name and logo marks, listing Metalast International, Inc. ("Metalast International") as the registered owner.  The Metalast mark pertains to a metal coating technology with industrial and military applications and related products.  In 1996, the USPTO granted these applications and issued the registrations listing "Metalast International, Inc." as the registered owner of the Metalast trademarks (the "Trademark").  (There are several different versions of the term "Metalast" which have been trademarked; because they all use the word "Metalast" (and for ease of reference) this Complaint refers to all versions using the singular "the Trademark.")

25.    Between 1996 and 2011, Semas filed several subsequent applications on behalf of Metalast International for registration of the Trademark and each application listed the registered owner as Metalast International.  In each subsequently issued registration from the USPTO, Metalast International was again explicitly listed as the registered owner.  Then, in 2013, Semas caused Metalast International to assign the Trademark to him, personally.  Semas remains the


EARLY
SULLIVAN
WRIGHT
GIZER &
MCRAE LLP
ATTORNEYS AT LAW

723466.1

registered owner of the Trademark.

26.   **Metalast LLC's Role.**   At about the same time as the Metalast Trademark was registered in 1994, David Semas became the President and *de facto* manager of Metalast LLC.   As alleged above, Metalast LLC is the same entity as Plaintiff MI-94 just with a different name.   As set forth in its Operating Agreement, "the purpose of [Metalast LLC]" was in part to "market and license the worldwide rights (excluding Japan) of METALAST, a patented and proprietary aluminum surface treatment technology . . . ."

27.   **The License Agreement Of The Trademark.**   In 1996, Semas undertook to have the owner of the Trademark, Metalast International, provide Metalast LLC with a license to exploit the Trademark.   On or about August 12, 1996, Metalast International and Metalast LLC entered into a "License Agreement."   The License Agreement granted Metalast LLC "a license and right of use to the [Metalast] Trademark in all applications as defined by the USPTO . . . ."   The License Agreement provided that it not only applied to the then existing "trademark and services mark," but also in the event such marks may be "amended from time to time."   The license became effective as of August 12, 1996.   The License Agreement states that it "*shall automatically renew* on each anniversary date thereafter for so long as MII [Metalast International, Inc.] *or its assigns or successors* in interest own the Trademark, unless terminated or cancelled as provided for herein."   (Emphasis added.)   As alleged above, Metalast International retained ownership of the Trademark until May 7, 2013.   On May 7, 2013, Semas caused Metalast International to assign the Trademark to himself and shortly thereafter Semas undertook to register the Trademark in his name.   Under the terms of the License Agreement, Semas is an assignee of the Trademark and bound by the License Agreement.   Since the creation of the License Agreement on or about August 12, 1996, no action has been taken, by anyone, to terminate or cancel the License Agreement and it has continued to automatically renew every year.

28.   **Investments In the Metalast Trademark.** Between 1994 and 2013, the members of Metalast LLC invested tens of millions of dollars in the development of the Metalast product and Trademark.   These investments led directly to the ultimate and current success and value of

EARLY
SULLIVAN
WRIGHT
GIZER &
MCRAE LLP
ATTORNEYS AT LAW
723466.1

the Trademark.

29.     However, during Semas' tenure as the Manager and President of Metalast LLC, he borrowed money from, among others, defendants Dean Meiling and Madylon Meiling and/or an entity controlled by the Meilings named DSM Partners, LLC (the "Meilings"). Even though Semas received the benefit of tens of millions of dollars from Plaintiff's members, he failed to maintain Plaintiff as a going concern.  On or about April 16, 2013, the Meilings (through their entity) initiated a Receivership Action for Metalast LLC.  The Court in the Receivership Action appointed a Receiver and on or about April 28, 2013, excluded Semas from all Metalast LLC operations.

30.     In or about November 2013, the Receiver conducted a sale of most of the assets of Metalast LLC to the Meilings.  However, the License Agreement was excluded from the Receivership sale.  After itemizing all that was included in the sale, the Receivership Order dated November 4, 2013, states that "[t]he sale shall further include any and all contracts and licenses of the Company, subject to approval of the counter party."  No counter party to the License Agreement ever gave approval for its sale to the Meilings in connection with the Receivership.

31.     Notably, Semas purportedly resigned from management of Metalast LLC on May 7, 2013.  That same day Semas signed several assignments of the Metalast Trademark on behalf of his alter ego, Metalast International, to himself.

32.     In addition, the Receiver changed the name of Metalast LLC to MI-94, LLC. Accordingly, after the close of the Receivership and the sale of Metalast LLC's assets, the License Agreement, including and especially the rights conferred by the License Agreement to exploit the Trademark, remained with Metalast LLC, then renamed as MI-94.

33.     Finally, the Meilings *did not purchase the Trademark* out of the Receivership.  The Trademark was not owned by Metalast LLC and thus, by definition, the Trademark could not be, and was not sold by the Receiver to the Meilings.  The Meilings knew that the Trademark was not owned by Metalast LLC and thus could not be sold to them by the Receiver.  However, following the Receivership sale, and as alleged further below, the Meilings falsely claimed ownership of the Trademark.

EARLY
SULLIVAN
WRIGHT
GIZER &
MCRAE LLP
ATTORNEYS AT LAW
WGM

34.     **The Meilings Interfered In The Plaintiff's Right To Use The Trademark**. The Meilings were and are aware of the License Agreement since they began loaning money to Metalast LLC. The Meilings have known about the License Agreement since at least 2014 when they claim it was first produced to them by Semas. The Meilings are also aware of the descriptions of the License Agreement found in materials made available to potential investors in Metalast LLC and they are aware that the purpose of Metalast LLC has always been to market the Metalast products and to research and develop additional uses for the Metalast technology. The Meilings were and are well aware of the enormous investment of money (tens of millions of dollars) invested by the members to develop high quality Metalast products and the right of Plaintiff's members to recoup that investment. Moreover, the Meilings were well aware that the Distributor Defendants and others were prospective customers of Metalast Trademarked products distributed by the Plaintiff pursuant to the License Agreement and that this constituted a prospective economic advantage.

35.     Following the Receivership sale, and even though the Meilings knew that they had not acquired the Trademark from the sale, the Meilings fraudulently, and with unclean hands, purported to take control of the Trademark including by misrepresenting themselves as, in effect, the originators of "Metalast."

36.     As a result of the Meilings false claims that they owned the Trademark, litigation between Semas and the Meilings ensued. The details of this litigation will not be recounted here.

37.     Eventually, in 2015, Semas and the Meilings settled the issue of "ownership" of the Trademark with the Meilings agreeing that ownership of the Trademark would go to Semas and that they would "no longer be able to use the name Metalast in any fashion or manner whatsoever." Shortly thereafter, the Meilings rebranded their metal coating product as "Chemeon" but soon discovered that this new name cut off their ability to market to certain industries including the U.S. Government which had issued its approval specifically for the "Metalast" name. In response, in or about March 2015, the Meilings began marketing their product using the phrase "formerly Metalast" and/or "Formerly known as Metalast." For example, the Meilings referred to their Chemeon entity as "Chemeon Surface Technology

EARLY
SULLIVAN
WRIGHT
GIZER &
MCRAE LLP
ATTORNEYS AT LAW

723466.1

(formerly Metalast)."

38.     Further litigation ensued between Semas and the Meilings over the use of the term "formerly Metalast."  Eventually, in an order dated February 23, 2021, the Court ruled that:

> Chemeon's use of the phrase "formerly Metalast" was not a fair use of this term because it plainly violated the terms of the Settlement Agreement and implied that the company "Metalast" ceased to exist or was subsumed by Chemeon.  Moreover, Chemeon's use of "formerly Metalast" was not limited to historical references, an in fact, was not historically accurate in several respects based on the evidence presented at trial."  This language, which comes from the superseded District Court's opinion was affirmed by the Ninth Circuit in *Chemeon Surface Technology LLC v. Metalast International, Inc.*, 2022 WL 179316 *1 (9th Cir. June 2, 2022).

39.     Since at least 2015, the Meilings have used their false claims of a right to exploit the Trademark to enter into what Plaintiff is informed and believes are exclusive, long-term agreements with the Distributor Defendants.  Specifically, the Meilings have used the term "formerly Metalast" to allude to the source of the Chemeon chemical products that it was selling thereby using and creating misperceptions about the formulas and ingredients of those products as well as how and where they were manufactured.  Plaintiff is further informed and believe that the Distributor Defendants constitute a virtual monopoly share of the market for Metalast products.  Accordingly, this conduct by Meilings has prevented and interfered with the ability of Plaintiff to exercise its rights under the License Agreement to exploit the Trademark.  In addition, the Meilings have interfered with the right and ability of the Plaintiff to recoup and/or profit from Plaintiff's members investments in the Metalast technology and Trademark.

40.     Plaintiff did not know that the Meilings were interfering in their ability to exploit the Trademark until, at the earliest, February 2021, when Judge Baldwin issued the decision quoted from above in the matter styled *Chemeon Surface Technology* [a Meiling entity] v. *Metalast International, Inc*. [a Semas entity], Case Number 3:15-cv-00294-CLB.  As alleged above, Judge Baldwin held that the Meilings had no right to brand their Chemeon products with "formerly Metalst" (or any words to that effect) and, as also alleged above, this holding was affirmed by the Ninth Circuit on or about June 2, 2022.

41.     Over at least the past four (4) years and more, one or more of the Distributor

723466.1

EARLY
SULLIVAN
WRIGHT
GIZER &
MCRAE LLP
ATTORNEYS AT LAW

Defendants have purported to acquire the right to use the Metalst Trademark name from the Meilings and to reimburse them for the supposed acquisition of such rights.[2] The Distributor Defendants have in turn distributed products containing the Trademark to customers. Thus, the Distributor Defendants have not only infringed on the Metalast Trademark by using it without authorization, but they have also contributed to the Meiling's infringement.

## FIRST CAUSE OF ACTION

### (False Designation Of Origin By The Distributor Defendants

### Lanham Act Section 1125)

42. Plaintiff incorporates by reference the allegations in paragraphs 1-41 as alleged above as if set forth herein in full.

43. The Distributor Defendants know, and have known, since at least 2015 that the Meilings do not own or have a right to exploit the Metalast Trademark and that the Meilings may or may not manufacture their products with the same ingredients or in the same manner as Metalast products have been formerly manufactured. The Distributor Defendants also knew that the Meilings lack the authority to use the phrase "formerly Metalast" or "formerly known as Metalast" or to otherwise affiliate themselves, in any way, with the Metalast name or Trademark.

44. Plaintiff possesses a right and interest to sue under Section 1125 because it is a party to a License Agreement authorizing it to do business using the Metalast Trademark. In addition, Plaintiff possesses a separate and independent right to sue under Section 1125 by virtue of the stated purpose of its Operating Agreement and the intertwined investments by Plaintiff's members in generating and creating value in and for the Trademark (*i.e.* the development of the Trademark and Metalast products was and is the express purpose of Plaintiff).

45. The Distributor Defendants have misrepresented that their Chemeon products are "formerly Metalast," falsely implying that they are using the same formulas and ingredients as

---

[2] In these circumstances, the applicable statute of limitations is the most comparable state claim. Here, that claim would be Nevada statute section 598A.060 which prohibits acts that substantially lessen competition or restrain trade and which has a four year statute of limitations. NV Rev. Stat. § 598A.220.


EARLY
SULLIVAN
WRIGHT
GIZER &
MCRAE LLP
ATTORNEYS AT LAW

723466.1

10

Metalast and or that the products they are acquiring from the Meilings and/or distributing have, as their origin, the Plaintiff.  In fact, the Plaintiff is not the source of the products distributed by the Distributor Defendants because the Meilings, in collaboration with the Distributor Defendants, have interfered in the right of the Plaintiff to market Metalast products.

46.     The Distributor Defendants continued and knowing use of the Metalast name, without the right to do so, constitutes a violation of Section 1125 giving rise to the claims alleged herein by Plaintiff.  In addition, the conduct of the Distributor Defendants as alleged herein contributed to the Meilings' violations of Section 1125 as alleged herein. Use of a Trademark without the right to do so constitutes a violation of Section 1125 giving rise to the claims alleged herein by Plaintiff.   In addition, the conduct by the Distributor Defendants alleged herein contributed to the Meilings' misuse of the Trademark as alleged herein.

47.     As alleged above, Defendants conduct violates the Lanham Act and is causing damage to Plaintiff by preventing Plaintiff from doing business with the Trademark.  As a result, Plaintiff is entitled to the remedies of a constructive trust on any monies in the possession the Distributor Defendants which rightfully belong to Plaintiff and to an order that the Distributor Defendants disgorge any profits or other inequitably earned monies which rightfully belong to Plaintiff.  In addition, Plaintiff is entitled to damages in an amount to be proven at trial.

## SECOND CAUSE OF ACTION

### (False Designation Of Origin Against The Meilings

### Lanham Act Section 1125)

48.     Plaintiff incorporates by reference the allegations in paragraphs 1-47 as alleged above as if set forth in full herein.

49.     The Meilings knew and know that Semas is the actual owner of the Trademark since at least 2015 and that Plaintiff is licensed to do business with the Metalast Trademarks in all applications as defined by the USPTO and have known since at least 2013 that the members of Metalast LLC have invested tens of millions of dollars in generating and creating value in and for the Trademark.   The Meilings have also known, since at least 2015, that they agreed to a Settlement Agreement with Semas (as alleged above) that barred them from using the Metalast

723466.1

name in any manner whatsoever to describe their product(s).

50.     Plaintiff possesses a right and interest to sue under Section 1125 because it is a party to a License Agreement authorizing it to do business using the Metalast Trademark.   In addition, Plaintiff possesses a separate and independent right to sue under Section 1125 by virtue of the stated purpose of its Operating Agreement and the intertwined investments by Plaintiff's members of tens of millions of dollars in generating and creating value in and for the Trademark (*i.e.* the development of the Trademark and Metalast products was and is the express purpose of Plaintiff).

51.     The Meilings have intentionally, knowingly and without authorization used the Metalast name in commerce and on products thereby misleading their customers (and the customers of the Distributor Defendants who have been doing business with the Meilings) as to the source of, and expected quality of, the products. More specifically, the Meilings' use of the words "formerly Metalast" on their products deceived their customers as to the origin of those products and implied that the products originated with Plaintiff; this is false and violates Section 1125.

52.     The Meilings' conduct as alleged above has deceived and is likely to deceive the public.

53.     The Meilings' conduct violates the Lanham Act and unless restrained will continue to injure Plaintiff, causing damage in an amount to be proven at trial but no less than three times any profits earned by the Meilings from their misuse of the Metalast name.  In addition, Plaintiff is entitled to a constructive trust on any monies currently in the possession of the Meilings and/or which come into the possession of the Meilings as a consequence of the misuse of the Metalast name and also an order that the Meilings disgorge any such monies to the Plaintiff.

## THIRD CAUSE OF ACTION

### (Interference With Prospective Economic Advantage Against The Meilings)

54.     Plaintiff incorporates by reference the allegations in paragraphs 1-53 as alleged above as if set forth herein in full.

55.     The Meilings have known about the License Agreement since at least 2014 when

723466.1

EARLY
SULLIVAN
WRIGHT
GIZER &
MCRAE LLP
ATTORNEYS AT LAW

they claim it was first produced to them by Semas.  The Meilings are also aware of the descriptions of the License Agreement found in materials made available to potential investors in Metalast LLC and they are aware that the purpose of Metalast LLC has always been to market the Metalast products and to research and develop additional uses for the Metalast technology.  The Meilings were and are well aware of the enormous investment of money (tens of millions of dollars) invested by the members of Metalast LLC to develop high quality Metalast products and the right of Plaintiff's members to recoup that investment.  Moreover, the Meilings were well aware that the Distributor Defendants and others were prospective customers of Metalast Trademarked products distributed by the Plaintiff pursuant to the License Agreement and that this constituted a prospective economic advantage.

56.     The Meilings acted to disrupt the prospective economic advantage between Plaintiff and the Distributor Defendants (and other potential customers) by the Meilings' statements and conduct indicating that they were the rightful owner of the Trademark when they were not and they knew they were not.

57.     Plaintiff has suffered economic losses in the form of lost royalties and other monies from the exploitation of the Trademark which losses were proximately caused by the Meilings' interference.

## FOURTH CAUSE OF ACTION

### (Unjust Enrichment Against All Defendants)

58.     Plaintiff incorporates by reference the allegations in paragraphs 1-57 as alleged above as if set forth herein in full.

59.     As a result of the unjust and improper conduct of the Defendants, and each of them, as alleged herein, the Defendants and each of them have been unjustly enriched in amount to be proven at trial.

60.     The Defendants retention of the monies gained through their misuse of the Trademark would serve to unjustly enrich the Defendants and each of them and otherwise would be contrary to the interests of justice.

61.     In order to prevent Defendants, and each of them, from being unjustly enriched at

EARLY
SULLIVAN
WRIGHT
GIZER &
MCRAE LLP
ATTORNEYS AT LAW
723466.1

the expense of Plaintiff, Plaintiff seeks an order of this Court requiring Defendants to disgorge and turn over to Plaintiff any and all revenues and profits earned from the misconduct alleged herein.  In addition, to the extent such an order is in any way, and for any period of time, not feasible, Plaintiff asks that this Court order that all such ill-gotten gains be held by the Defendants and each of them in a constructive trust for the benefit of Plaintiff.

### PRAYER FOR RELIEF

### WHEREFORE PLAINTIFF PRAYS FOR THE FOLLOWING RELIEF:

1. For damages in an amount to be proven at trial;

2. For equitable relief, including an injunction against Defendants' further use of the Trademark and/or a constructive trust and disgorgement of any ill-gained monies or other consideration;

3. For attorney's fees;

4. For costs of suit; and

5. For such other and further relief as the Court may deem just.

### DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby demands a jury trial on all of the claims herein.

Respectfully submitted,

Dated:  April 25, 2023            EARLY SULLIVAN WRIGHT
                                  GIZER & McRAE LLP


                           By:  __/s/--Scott E. Gizer_____
                                  Scott E. Gizer, Esq., Nevada Bar No. 12216
                                  *sgizer@earlysullivan.com*
                                  EARLY SULLIVAN WRIGHT
                                  GIZER & McRAE LLP
                                  8716 Spanish Ridge Avenue, Suite 105
                                  Las Vegas, Nevada 89148
                                  Telephone:  (702) 331-7593
                                  Facsimile:  (702) 331-1652

                                  Eric P. Early, State Bar Number 166275
                                  (to apply *Pro Hac Vice*)
                                  *eearly@earlysullivan.com*



14

**COMPLAINT**

723466.1

1

Jeremy J. F. Gray, State Bar Number 150075
(to apply *Pro Hac Vice*)

2

   *jgray@earlysullivan.com*

3

EARLY SULLIVAN WRIGHT
   GIZER & McRAE LLP

4

6420 Wilshire Boulevard, 17th Floor
Los Angeles, California 90048

5

Telephone: (323) 301-4660
Facsimile: (323) 301-4676

6

7

Attorneys for Plaintiff

8

MI-94, LLC, as successor to
METALAST INTERNATIONAL LLC

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28



EARLY
SULLIVAN
WRIGHT
GIZER &
McRAE LLP
ATTORNEYS AT LAW

723466.1

15
**COMPLAINT**